**PETER KUNTZ LUMBER CO v WILSON et**

Ohio Appeals, 2nd Dist, Montgomery Co

No 1166.   Decided July 14, 1933

W. S. Rhotehamel, Dayton, and C. W. Ozias, Dayton, for plaintiff.
William G. Pickrel, Dayton, for defendants, Mr. and Mrs. I. E. Baker.

on appeal and we must hear it and determine it de novo, weighing the testimony, considering the credibility of the witnesses and the probability of their respective statements.

We have read the record with care, with an appreciation that the issue presents a question of moment to the parties.

We will not undertake to discuss in great detail all of the testimony but only such as necessarily has entered into our determination of the disputed questions of fact in this case.

It fairly appears that Lester Butler, who drew the plans and made the blue prints and specifications for the owners and was the overseer on the job for the contractor was the agent of both parties from a time prior to the beginning of the building until its completion. There might be some question about the agency of Butler for the owners after the work on the building had begun, if it were not for the fact that Mr. Baker insists that Butler represented them at all times. Butler was also representing the contractor on other jobs in process of construction during the period covered by the record in this case. The written contract, of which the plans and specifications were a part, did not call for placing of mold in the lower and upper halls of the Baker residence. They provided only for picture mold in dining room and sun parlor. The variations from the provisions of the plans and specifications are few, indeed. In fact, it is most unusual to find a building completed with so few changes and extras as appear in the erection of the Baker dwelling. Although the plans and specifications and contract did not contemplate the placing of any picture molding on the halls down stairs and upstairs, if this work was done by the contractor under agreement with the owners it could very properly be held to be a part of the contract which was not fulfilled until the molding was in place.

The burden in this case is upon the plaintiff to establish compliance with the requisites of a lien. The clear weight of the evidence is to the effect that this molding was not necessary to the completion of the structure. The placing of picture molding is purely a matter of personal taste. It may be put in one room and left off in an adjoining room. As Mr. Wilson, the contractor, put it: "If contract didn't call for it, it was complete without it."

Respecting the item of October 1, 1928, it appears that Mr. Besanceney, an employee of the company, made up the orig-

## OPINION

By HORNBECK, PJ.

Around these disputes the evidence revolves and there is presented for our consideration a voluminous record of facts and figures, extensive in detail and comprehensive in consideration. The case comes to us

inal order for this 20 feet of yellow pine molding. He says at the request of Mr. Butler. Mr. Butler has no recollection of the order. Although it was the practice of the company to require receipts for deliveries made, no receipt is signed disclosing that the material was received by Butler. Mr. Besanceney describing the transaction says that: "Upon making up the order, it was given to our shipping clerk," and that: "Mr. Butler probably took the picture mold with him;" that "There is a notation 'Gone' upon the order"; that "According to the custom and practice of The Kuntz Lumber Company, this indicates that the lumber had been given into the possession of somebody and left the yard."

But no officer or employee of the company testifies who wrote "Gone" on the order. The handwriting is not identified. The shipping clerk who took the order from Mr. Besanceney is not identified. Mr. Besanceney did not see Mr. Butler get the molding, nor does any employee of the company testify that he delivered the molding to Mr. Butler. It, thus, is evident that there is no direct proof sufficient to establish that this 20 feet of yellow pine went into the possession of Butler, and if found it must be inferred from the fact that Butler ordered it. But if delivered to Butler, unless it appears that this yellow pine molding was delivered to the job or went into the building, there is a complete failure of proof on this necessary element upon which a mechanic's lien must be based.

The plaintiff offered the testimony of Edward Penrod, a carpenter in the employ of the contractor, who worked on the Baker job. He testifies that he put the molding on the rooms in the Baker residence; that he did not follow the blue prints, plans or specifications; that he acted under express instructions as to where to place the mold. The name of the man who instructed Penrod does not appear in the record, nor do his instructions appear. Penrod says that he put on all the mold downstairs and upstairs in the halls, including the alcove, and the gum trimming. He says the molding was on the job when he started to put it in but that he lacked a little to complete it; ran out of molding in the hallway upstairs which was the last place in which he put it; that he measured up what he needed, told Butler how much he lacked and Butler said: "Well, that will be too much to bring in one piece; just such a little bit. Maybe I will bring that out in my car. I will just bring it in two pieces."

He says that after he had the conversation with Butler he left the job and was not back for a few days and when he returned the molding was on the job. When he came back Butler was not there but the molding was there. "He (Butler) had brought out a couple pieces of molding for me—someone had." That he needed about 20 or 24 feet to complete the job. Further testifying, these questions were put and answers made.

"MR. RHOTEHAMEL:

Q. Then, when you got back on the job the molding was there? A. Yes, sir.

Q. Then what did you do with reference to the molding that was laying out there on the job? A. I completed it.

Q. Well, you completed it. You put it on the job? A. Yes.

Q. Then after that molding was put on the job, that completed the job, did it. A. Well, I just had part of a day's work, a few little things to finish up

Q. I mean as far as the molding was concerned. A. Oh, yes.

Q. That completed the entire molding work? A. Yes, sir.

Q. Now, this molding that you told Mr. Butler about, that you lacked, and the molding that he said that he would get and bring it out there and the molding that you saw on the job when you came back to work, where did you put that molding? A. That went in the upstairs hallway.

Q. Upstairs hallway. Now, after the molding had been installed by you—What part of the upstairs hallway? A. On the south side of the hallway, as I recall it."

He says that thereafter the molding was painted, although later he admits this statement to be conjectural, as he assumed that it was painted because the painters were working there when he had finished. He says at the time this molding was finished Mr. Baker was bringing a few things into the house preparatory to moving. He says that the work was completed when he put on the molding except for a little work that the painters were doing at that time.

It is apparent from Penrod's testimony that it dovetails with the theory of the plaintiff that the order of September 24th was not sufficient to complete the molding and that the added 20 feet of October 1st was needed and used to finish the job which Penrod did under Wilson's contract. If this testimony is true it establishes the plaintiff's case. But the difficulty is that it does not stand the test of cross examination.

It appears that after Mr. Penrod had

finished the work on the job for the contractor, he hung a screen door and built six screens above the front of the house under contract with Mr. Baker and for that service Mr. Baker paid him by check, which check was produced at the trial and tendered to Mr. Penrod on cross examination. It was for $6.00 payable to E. D. Penrod, signed Irvin E. Baker, dated September 14, 1928. Mr. Penrod admitted that the check was given for the sum stated and on the date it bore. It is only necessary to set forth the date of the check to establish that if Mr. Penrod put on any molding in the halls downstairs and upstairs or put up any additional molding amounting to some 20 to 24 feet, it could not have been that which was represented by either the order of October 1, 1928, or of September 24, 1928.

Penrod's evidence is the only direct testimony in the record tending to prove that the molding in the halls was put into the house by any of the contractor's employees.

This molding of October 1st, in our judgment, was not in the house prior to the contractor's completion of his contract. The plaintiff has not shown that the material represented by the charge of October 1st was delivered to the job. The most that could be said for the proof in the most favorable viewpoint for the plaintiff is that it might bear an inference that the material was delivered to Butler. The fact that the records disclose upon the order the word "Gone" would not be sufficient in any event, to establish that the lumber was delivered to the job. There is some attempt made to prove that the material of October 1st must have gone into the building because it was necessary to use it to complete the job. The dimensions of the rooms in connection with the amount of material delivered of date July 21, 1928, and September 24, 1928, are convincing that there was fully enough material to complete the work without the material in the order of October 1st. This is especially true if gum was used upstairs along with the yellow pine, which seems probable.

It was necessary for plaintiff to prove that the contractor placed this picture mold of October 1st in the house of the owner; and it was obvious if it went into the dwelling it must have gone into the hall downstairs or upstairs and that if placed there it was an extra not contemplated by the original contract. But there is no proof forthcoming that the contractor or Butler or any other agent or employee of the contractor ever mentioned this extra work to Mr. Baker; nor that the contractor or any

named agent or employee of his instructed any of his workmen to do this extra work or that any charge was made representative of this extra work by the contractor or any one in his behalf or payment made by the owner for this extra work to the contractor or to any one representing him.

We cannot overlook this absence of proof as to subject matter which it would seem was susceptible of proof in connection with a building erected by an experienced contractor. Mr. Wilson was on the stand, as were Mr. Butler and Mr. Penrod. It would seem that other employees and artisans who worked on the job for the contractor should have been available to have furnished some information respecting the essentials wherein the record is silent.

There is a failure of proof of plaintiff's case on its own testimony, which is accentuated by the facts adduced by defendants, the owners.

The record made by the owners supports the conclusion that the picture mold in the order of September 24, 1928, was placed in the lower and upper halls and the alcove in December, 1928; that it was painted the last week of September. The man who painted it, Frank Koogler, states the time when it was done, the material painted and what disposition was made of it; that some was stained, some painted; that he measured the amount needed and had plenty. Mr. Altic, who worked eight days finishing furniture for the Bakers in the garage back of the building under consideration, supports the statement that all of the picture molding was painted or stained when he went to work the 1st of October, and was moved to the second floor of the garage; that no delivery of picture mold was made while he was there. James Hartman testifies that he put the picture mold on the lower and upper halls and alcove, complete; that it was all gum stained downstairs, gum and yellow pine painted upstairs; that he got all that he put up from the second floor in the garage; that it was all painted and stained when he got it; that some was left; that it was done of date December 12, 1928. The check representing the payment to him is exhibited and in evidence. Mrs. Baker testifies that it was her practice to keep a diary upon which, under the date Wednesday, December 12, 1928, she made the notation: "Hartman put up mold." She testifies that the molding to which reference was made was that on the halls downstairs and upstairs. Mr. Baker definitely corroborates the testimony of Hartman and Mrs. Baker. Butler, the agency by which

the molding ordered of date October 1st, must have, if at all, reached the Baker property, says that he has no recollection whatever, either of ordering it or of taking it to the property. It is testified and undenied that the Bakers moved into the dwelling beginning October 3, 1928, and that the molding was not placed at that time.

William Kuntz, vice-president of the plaintiff company, and A. D. Roberts, superintendent of mills for the company, testify to an examination of the picture mold on the halls, particularly upstairs, and say that it bears unmistakable evidence that it was painted after it was put up. Giving this testimony full weight, it would not have probative effect to establish facts necessary to plaintiff's case but would weaken materially the credibility of the testimony of the witnesses for the defense, who say that the molding was painted before it was placed on the walls and was not painted after. If the effect of this testimony of Mr. Kuntz and Mr. Roberts was controlling of the issue of this case, we would visit the residence of Mr. Baker and make visual inspection of the picture mold but as it could not be dispositive of the case, it is not necessary for us to make this inspection.

We do not deem it necessary to further consider the testimony of the plaintiff to establish its case. Suffice to say that upon a fair consideration of the whole record it has failed to make proof, first, that there was any contract, express or implied, between Wilson or his agents and the owners to put up picture molding in the lower and upper halls. Second, that this picture molding was necessary to a completion of the building of the Bakers. Third, of delivery of the picture molding represented by the order of October 1, 1928. Fourth, that any part of this picture molding went into the Baker dwelling.

We have not discussed any of the authorities cited by counsel in their splendid briefs, for the reason that, in our judgment, the legal principles controlling this case are not in dispute. The questions upon which the decision rests are entirely within the realm of fact.

Judgment dismissing the petition of plaintiff against defendants, Bakers, and for their costs.

KUNKLE and BARNES, JJ, concur.